### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GABRIEL GARCIA<br>143 West St.<br>Hackensack, NJ 07601<br><br>            Plaintiff,<br>      v.<br><br>WINDMILL HEALTH PRODUCTS, LLC<br>10 Henderson Dr.<br>West Caldwell, NJ 07006<br>   and<br>VITAQUEST INTERNATIONAL, LLC<br>8 Henderson Dr.<br>West Caldwell, NJ 07006<br>   and<br>KISS MY FACE, LLC<br>10 Henderson Dr.<br>West Caldwell, NJ 07006<br>   and<br>CELMARK INTERNATIONAL, INC.<br>2600 Titan Row<br>Orlando, FL 32809<br>   and<br>MAXIMUM HUMAN<br>PERFORMANCE, LLC<br>165 Clinton Rd.<br>West Caldwell, NJ 07006<br><br>            Defendants. | CIVIL ACTION<br><br>No.<br><br>**JURY TRIAL DEMANDED** |

### CIVIL ACTION COMPLAINT

Gabriel Garcia, (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.     This action has been initiated by Plaintiff against Windmill Health Products, LLC, Vitaquest International, LLC, Kiss My Face, LLC, Celmark International, Inc., and Maximum Human Performance, LLC (hereinafter collectively referred to as "Defendants" unless indicated

1

otherwise) for violations of the Family and Medical Leave Act ("FMLA - 29 U.S.C. §2601 *et seq*.) and the New Jersey Family Leave Act ("NJ FLA"). Plaintiff asserts, *inter alia*, that he was unlawfully terminated by Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.  This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of the ADA.

3.  This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4.  Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, in addition, venue is properly laid in this district because Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the District of New Jersey for this action.

## PARTIES

5.  The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.  Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant Windmill Health Products, LLC (*hereinafter* "Defendant Windmill") is a company with a location at the above-captioned address that engages in the business of manufacturing and wholesale distribution of prescription drugs, proprietary drugs, and toiletries.

8. Defendant Vitaquest International, LLC (hereinafter "Defendant Vitaquest") is a manufacturer and distributor of vitamins and nutritional supplements in the U.S. Upon information and belief, the company operates through three subsidiaries, one being Defendant Windmill.

9. Celmark International, Inc. (hereinafter "Defendant Celmark") is headquartered at the above-captioned address and is a leading, FDA compliant, contract manufacturer of topical skincare, beauty products, and liquid nutritional supplements.

10. Kiss My Face, LLC (hereinafter "Defendant Kiss") is a company with a location at the above-captioned address that manufactures (through Defendant Celmark) and distributes (through Defendant Windmill) personal care products.

11. Maximum Human Performance, LLC (hereinafter "Defendant Maximum") is a company with a location at the above-captioned address that distributes supplements for bodybuilding, strength, weight loss, and fitness.

12. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

13. For example and upon information and belief:

    i. Keith Frankle is part or full owner of the above named Defendants;

    ii. During the beginning of his employment, Plaintiff was paid by Defendant Maximum. In or about early 2020, Defendant Windmill took over the majority of the facility at which Plaintiff worked and Plaintiff began performing work for Defendant Windmill; however, he was still being paid by Defendant Maximum. Plaintiff's payroll was eventually switched over to Defendant Windmill;

    iii. At one point during his employment, Plaintiff was performing work for Defendant Kiss and being supervised by Gail Gastelu (sister-in-law of Keith Frankle) until she was re-assigned to work for Defendant Celmark. However, Gail Gastelu would still visit the facility at which Plaintiff worked in West Caldwell, NJ;

    iv. At the time of his termination, Plaintiff was supervised by Nathalie Yin, who identifies herself as Senior Vice President/General Manager at Defendant Kiss on her LinkedIn profile; and

    v. Towards the end of Plaintiff's employment with Defendants, Plaintiff's work began to be overseen by Richard Davieau, who identifies himself on Linkedin as "Design Director" for Defendant Windmill, Defendant Vitaquest, and Defendant Celmark.

14. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in during the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

15. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

16. Plaintiff was employed with Defendants between March of 2016 and September of 2021 (for a total of 5+ years).

17. At all times, Plaintiff was employed at Defendants' 10 Henderson Dr., West Caldwell, NJ location.

18. Plaintiff officially began being paid by Defendant Windmill in or about August of 2020. However, Plaintiff was performing work for Defendant Windmill prior to this (but was being paid by Defendant Maximum).

19. During his employment with Defendants, Plaintiff was a dedicated and hard-working employee.

20. At the time of his termination, Plaintiff was supervised by Vice President of Marketing/General Manager of Defendant Kiss – Nathalie Yin (hereinafter "Yin").

21. In addition to Yin, Plaintiff's work was being overseen by Richard Davieau (Director of Design for Defendant Windmill, Defendant Celmark, and Defendant Vitaquest – hereinafter "Davieau") towards the end of his employment with Defendants.

22. At all times during his employment with Defendants, Plaintiff was also indirectly supervised by Owner/President of Defendants, Keith Frankle (hereinafter "Frankle").

23. In or about August of 2021, Plaintiff informed Defendants' management, including but not limited to Office Manager – Beverly Adler (hereinafter "Adler") and Frankle that his wife was due to give birth in the near future and that he would like to take protected leave for the birth of his child.

24. While Adler's title with Defendants was "Office Manager" she had many job functions and was considered "Human Resources" for Plaintiff's facility.

25. When Plaintiff discussed needing to take protected leave with Adler, she did not provide any helpful information and simply told Plaintiff that the company does not offer protected leave, he would have to figure it out on his own, and that he was the first person to request this form of leave.

26. Plaintiff was later sent an email by Adler which provided information on how he could apply for paid family leave benefits under New Jersey law. The contents of this email appeared to be copied and pasted from a website and did not provide an application for FMLA/NJFLA leave or proper notification of any rights he had under the FMLA/NJFLA – it simply stated "Your employer may also be able to provide insight on job protection and if you qualify for it through the federal Family and Medical Leave Act (FMLA) or the New Jersey Family Leave Act (NJFLA)."

27. Plaintiff then attempted to speak with Frankle about taking protected leave for the birth of his child; however, Frankle seemed to be bothered and frustrated by Plaintiff's request. Therefore, Plaintiff asked Frankle if he could work from home after the birth of his child instead of taking protected medical leave (which would place him out of work completely for 12 weeks).

28. Frankle told Plaintiff that he would look into Plaintiff's work-from-home proposal and get back to him, but Frankle never followed up with Plaintiff (despite Plaintiff's continued inquiries).

29. Plaintiff continued to discuss with Defendant's management (including Adler, Frankle, and Yin) his intent to take leave under FMLA and/or NJFLA for the birth of his child.

6

30. For example, on September 27, 2021, Plaintiff had an in-person discussion with Davieau, Yin, Adler, and Melinda Librizzi (Frankle's Assistant) regarding the dates he would be taking protected family leave and followed up in an email thereafter stating as follows:

> Good afternoon everyone,
>
> As we spoke earlier in the conference room, I will be taking some family leave as my wife is expecting. She is due November 2, 2021. Therefore, the family leave will be for a period of 12 weeks starting on the month of November 1st, 2021 through January 21, 2021.
>
> Thank you!
>
> Gabriel G.

31. Despite being aware of Plaintiff's request to take protected leave for the birth of his child, Defendants' management never properly informed Plaintiff of his individualized FMLA or NJ FLA rights; thus, Defendants failed to follow proper notice, designation, and informational regulations of the FMLA and the NJ FLA.

32. On or about September 29, 2021, only two days after his September 27, 2021 email solidifying the dates of his intended protected family leave, Plaintiff was abruptly informed that he was being terminated from his employment with Defendants for alleged performance issues.

33. The reason given for Plaintiff's termination is completely pretextual as (1) Plaintiff was not issued any progressive discipline regarding his performance; (2) Plaintiff was not issued any performance evaluations outlining his alleged poor performance; (3) Plaintiff was never placed on a performance improvement plan indicating what areas of his work needed improvement; and (4) despite being terminated for alleged poor performance, Plaintiff was

offered an unsolicited severance agreement which required that he release any and all claims against Defendants in exchange for a small monetary sum.[1]

34. Plaintiff therefore believes and avers that he was terminated in retaliation for requesting protected medical leave under the FMLA and/or NJ FLA for the birth of his child.

### Count I
### Violations of the Family and Medical Leave Act ("FMLA")
(Retaliation & Interference)
-Against All Defendants-

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

37. Plaintiff requested leave for the birth of his child from Defendants, his employers, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

38. Plaintiff had at least 1,250 hours of service with Defendants during his last full year of employment prior to his requested FMLA leave.

---

[1] *See Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013)(an employer who offered severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)(finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]."); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed. R. Evid. 408); *Brandy v. Maxim Healthcare Servs., Inc.*, 2012 WL 5268365, at *2 (N.D. Ind. 2012) (holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

39. Defendants are engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

40. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

41. Defendants committed interference and retaliation violations of the FMLA by: (1) taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA; (2) failing to properly inform/notify Plaintiff of his FMLA leave rights, despite Plaintiff requesting time off for an FMLA-qualifying reason (i.e. the birth of his child); (3) terminating Plaintiff in order to prevent him from utilizing FMLA leave; (4) considering Plaintiff's FMLA needs in making the decision to terminate him; and (5) terminating Plaintiff for requesting FMLA-qualifying leave.

42. These actions as aforesaid constitute violations of the FMLA.

### Count II
### Violations of the New Jersey Family Leave Act (NJ FLA)
### (Retaliation & Interference)
### -Against All Defendants-

43. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44. Plaintiff reasserts each and every allegation from Count I, as such actions in this case constitute violations of the NJ FLA. N.J.S.A. § 34:11B-1, *et seq*.

45. Defendants committed interference and retaliation violations of the NJFLA by: (1) taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA; (2) failing to properly inform/notify Plaintiff of his FMLA leave rights, despite Plaintiff requesting time off for an FMLA-qualifying reason (i.e. the birth of his child);

(3) terminating Plaintiff in order to prevent him from utilizing FMLA leave; (4) considering Plaintiff's FMLA needs in making the decision to terminate him; and (5) terminating Plaintiff for requesting FMLA-qualifying leave.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

                    Respectfully submitted,

                    **KARPF, KARPF & CERUTTI, P.C.**

By: _____

                    Ari R. Karpf, Esq.
                    3331 Street Road
                    Two Greenwood Square, Suite 128
                    Bensalem, PA 19020
                    (215) 639-0801

Dated: November 18, 2021